UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. __14-2221- Turnoff__

UNITED STATES OF AMERICA

vs.

DONNIEL LAVON KEYS and
KEBREYANA JAMAI JONES,

      **Defendants.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  ____ Yes   _X_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  ____ Yes   _X_ No

    Respectfully submitted,

    WIFREDO A. FERRER
    UNITED STATES ATTORNEY

BY: _/s/ Seth Schlessinger_
    SETH M. SCHLESSINGER
    ASSISTANT UNITED STATES ATTORNEY
    Florida Bar No. 64065
    99 N. E. 4th Street
    Miami, Florida 33132-2111
    TEL (305) 961-9260
    FAX (305) 536-4676

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
| v. | ) |
|  | ) Case No. 14-2221 —Turnoff |
| Donniel Lavon Keys and | ) |
| Kebreyana Jamai Jones, | ) |
|  | ) |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __8/1/2013 - 2/18/2014__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1594 | Conspiracy to Engage in Sex Trafficking of Minors. |
| 18 U.S.C. § 1591 | Sex Trafficking of Minors. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Amanda L. Detterline, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 02/21/2014

*Judge's signature*

City and state: Miami, Florida     Hon. William C. Turnoff, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Amanda L. Detterline, being first duly sworn, hereby depose and state as follows:

## BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation, and have been so employed since March 2009. I am currently assigned to the Miami Field Office of the FBI and I am a member of the Child Exploitation Task Force (CETF) in South Florida. The CETF is comprised of state, local, and federal law enforcement which includes the Miami-Dade Police Department (MDPD), Miami Beach Police Department (MBPD), and the Broward Sheriff's Office (BSO), whose purpose is to implement the Department of Justice's "Innocence Lost National Initiative."

2. I am presently assigned to investigate a variety of offenses related to child exploitation and human trafficking, including offenses involving sex trafficking of children, in violation of Title 18, United States Code, Section 1591; enticing a minor to engage in prostitution, in violation of Title 18, United States Code, Section 2422(b); as well as offenses involving transportation for purposes of prostitution, in violation of Title 18, United States Code, Section 2421. I am thus a "federal law enforcement officer" as defined by Fed. R. Crim. P. 41(a)(2)(C). Prior to being assigned to the CETF, I was assigned to a counterintelligence squad in the Miami Field Office.

3. This affidavit is submitted in support of the attached complaint charging Donniel Lavon KEYS and Kebreyana Jamai JONES with: 1) conspiracy to engage in sex trafficking of minors, in violation of Title 18, United States Code, Section 1594; and 2) sex trafficking of minors, in violation of Title 18, United States Code, Section 1591.

4. The facts in this affidavit are based upon my personal knowledge, as well as knowledge, information, and documentation that I obtained from other law enforcement officers and witnesses. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, it does not include every fact known to me or to other law enforcement officers regarding this matter.

## FACTS

5. On February 18, 2014, Miami Dade Police Department (hereinafter "MDPD"), a member agency of the CETF, was contacted by the City of Miami Police Department in reference to a minor female, D.S., who had been recovered by MDPD and who informed MDPD of the following:

**Interview of D.S.**

a. D.S. (also known as "Hollie" and "Tiny"), a sixteen-year-old female, previously resided in Miami, Florida with her mother and sibling. In or around August 2013, D.S. met an adult female on the social-networking Internet site Facebook. The female went by the publicly available Facebook user name of "Kiki Cocaina Jones," (later identified as JONES). D.S. and JONES began sending messages to each other on Facebook and exchanged telephone numbers. D.S. told JONES she was sixteen years old. D.S. and JONES agreed to meet. D.S. ran away from her mother's home to meet JONES because she was fighting with her mother. JONES picked up D.S. in her black Honda Accord with dark tinted windows.

b. JONES brought D.S. to a subdivision called Country Walk in Miami, Florida, located on SW 152nd Street. When D.S. arrived at JONES' house, D.S. met another female, named Sharrah WELCH. JONES spoke to D.S. about earning money by

being paid to have sexual intercourse with men. JONES and WELCH were working as prostitutes and advertising themselves as prostitutes on Backpage.com.[1] D.S. later found out that JONES had taken a picture of D.S. from D.S.' Facebook account and posted it on Backpage.com. D.S. told JONES she did not want to work as a prostitute. JONES told D.S. that if D.S. did not want to work, then JONES had to take D.S. back home because JONES could get in trouble for having an underage girl at her house. In approximately October 2013, JONES took D.S. home.

   c. In or around the end of December 2013 or the beginning of January 2014, D.S. again ran away from home. D.S. went to stay with a cousin in Pompano Beach, Florida and then with friends in Fort Lauderdale, Florida. D.S. began to communicate with JONES again. JONES told D.S. that D.S. could come hang out with JONES for a couple of days. JONES again picked up D.S. in her black Honda Accord. JONES drove D.S. to a house located at 14420 Monroe Street, Miami, Florida 33176. D.S. gave a detailed description of the residence and its interior. D.S. also stated JONES had two (2) dogs: a Rottweiler and a Dachshund.

   d. When D.S. arrived to the residence, a man was sitting outside. D.S. was introduced to the man the next day, who identified himself to D.S. as "Darnell" (later identified as KEYS). WELCH was also at the residence. For approximately the first two to three days D.S. stayed at the 14420 Monroe Street residence. One night, D.S. knocked on the door to the room where JONES and KEYS were staying. When there was no answer, D.S. walked into the room and saw JONES and KEYS engaged in sexual intercourse. JONES and KEYS stopped having sexual intercourse and KEYS yelled at

---

[1] Backpage.com is an Internet site containing a collection of online resources, including classified ads, forums and various e-mail services.

D.S. KEYS yelled to the girls about D.S. and pulled out a handgun. KEYS stated: "I'll kill this girl and her whole family. Let's play Russian roulette and roll the barrel and stick it in your mouth. What do you think will happen?" KEYS then hit D.S. in the right eye with the end of the handgun. D.S. suffered a swollen black eye. KEYS took D.S. and WELCH's telephones away from them and stated he was running the show from then on. KEYS told D.S. he knew everything about her already. KEYS told the girls, including D.S., that they would have to work. D.S. understood KEYS's statement to mean that D.S. would be required to work as a prostitute.

    e.    On the following day, KEYS told WELCH to take photographs of D.S. D.S. was wearing a black thong in one picture and a blue thong in another picture. WELCH took the photographs using her cellular telephone. D.S. stated the telephone number associated with the telephone was XXX-XXX-2939. JONES then posted a Backpage.com advertising D.S. as a prostitute. D.S. was unsure as to what device JONES used to post the advertisement on the Internet. However, D.S. did know that the telephone number on the Backpage.com advertisement belonged to JONES and that KEYS paid for the advertisements on Backpage.com utilizing Vanilla Visa cards.

    f.    KEYS and JONES told D.S. the prices that she should charge her prostitution clients. A "short stay" (a fifteen-minute period) was to cost $60; a half hour was to cost $80; a forty-five minute period was to cost $100; and an hour was to cost $100. Originally, JONES told D.S. they would split the money so that sixty (60) percent went to JONES and/or KEYS, and D.S. would keep forty (40) percent went to D.S. In fact, however, D.S. was never permitted to keep any of the money that prostitution clients paid to engage in sexual intercourse with her.

4

g. D.S. then engaged in multiple prostitution dates under the supervision of KEYS and JONES at the 14420 Monroe Street residence. Prior to each prostitution date, the client was screened at the door by D.S. in an attempt to determine whether the client was in fact a law enforcement officer. KEYS typically waited in the kitchen area with one of his two (2) handguns for protection in case something went wrong with the date. D.S. stated KEYS usually kept a handgun with him while the prostitution dates occurred in the house. D.S. stated if the gun was not on KEYS then he kept it in a black satchel-type bag in his room or hanging from the headboard on the bed in his room. D.S. was instructed to grope the client and then ask the client to touch D.S. before being allowed to go to the room where the prostitution dates occurred. D.S. was told that this would identify undercover law enforcement officers, who would not be allowed to engage in that activity. The clients were also checked at the door for weapons. KEYS and JONES told D.S. to watch WELCH the first few times to learn the screening process. All of D.S.'s prostitution dates occurred inside the 14420 Monroe Street residence.

h. D.S. was instructed that, once she and the client had entered the room where the prostitution date was to occur, that she should receive the money up front from the clients. D.S. would then open the door and either hand the money to KEYS or JONES, who would be waiting outside of the room, or put it in a bowl that was left on the floor outside of the room. JONES told D.S. to use condoms with all of her prostitution clients, but D.S. stated no one was concerned if D.S. failed to do so. KEYS and JONES provided the condoms to be used in the prostitution dates.

i. A video camera was set up in the room where the prostitution dates occurred. KEYS and JONES told D.S. it was there so that D.S. could be monitored

during the prostitution dates. The video camera was always on, and was located on a lamp stand with a cheetah-print black and white scarf over it to hide it. D.S. was told to tell clients that it was a wireless Internet device if the clients ever asked, because it had green blinking lights similar to those commonly found on wireless Internet devices. KEYS and JONES monitored the video footage using a telephone application called ADT Pulse. D.S. did not believe the video footage was recorded; however, on one occasion JONES told her that D.S. had done something wrong on a prostitution date and that JONES could show D.S. on video. This caused D.S. to believe that the video camera may have been recording.

j. D.S. stated that she resided with KEYS, JONES and WELCH at the the 14420 Monroe Street residence from approximately mid-January 2014 until February 18, 2014. During this time, D.S. was not left alone in the residence. D.S. stated she conducted more than fifteen (15) prostitution dates overall and that all dates occurred within the 14420 Monroe Street residence. D.S. stated Thursday nights through Sunday mornings were the busiest and she sometimes conducted as many as five (5) prostitution dates a night. On other days, D.S. estimated that she conducted approximately two (2) to three (3) prostitution dates a night.

k. KEYS was often violent towards JONES and D.S. KEYS hit JONES on multiple occasions. KEYS hit D.S. approximately five (5) times during the time she stayed at the 14420 Monroe Street residence. Once, KEYS hit her in the face with the pistol, and on other occasions KEYS slapped D.S. in the face. JONES also hit D.S. once. D.S. later described an incident in which KEYS and JONES were engaged in an argument inside the living room of the 14420 Monroe Street residence, while WELCH

was present. D.S. overheard WELCH interject herself into the argument and say "That girl in there is sixteen years old. She doesn't need to be there." Some of the prostitution dates that D.S. conducted occurred after this incident.

l. D.S. observed KEYS cook and sell drugs out of the TARGET LOCATION. D.S. observed KEYS with a lot of marijuana, cocaine, crack cocaine, and "beans." D.S. described "beans" as little green pills similar to ecstasy (MDMA). KEYS sold drugs through the windows on the TARGET LOCATION and sold them to people in the vicinity. D.S. stated KEYS also sold drugs outside the TARGET LOCATION as well.

m. On February 17, 2014, KEYS and JONES took D.S. and WELCH to WELCH's residence at 2340 NE 7th Avenue, Miami, Florida. The ostensible purpose of this trip was to provide D.S. a break from conducting prostitution dates. WELCH lives with a roommate Tamaru LNU; Tamara had a boyfriend named Richard LNU. At one point, KEYS and JONES left the house, and D.S. was able to talk to Tamara and Richard, who advised D.S. that she did not need to be prostituting and that D.S. was too young to do so. Tamara, Richard and D.S. left the house to run an errand, while WELCH stayed home. Tamara then called law enforcement officers. While Tamara, Richard and D.S. were away from the residence, KEYS and JONES returned to the house. WELCH later left with KEYS and JONES. D.S. was then recovered by law enforcement.

6. On February 18, 2014, an administrative subpoena was issued to Backpage.com. The information provided in response included a Backpage advertisement which included a photograph of D.S. in the "deleted photograph" section. D.S. was shown the advertisement, and indicated that it had been an advertisement offering her as a prostitute, and initialed the

7

advertisement. D.S. also recognized the e-mail address used to post the advertisement, ninaremylopez2013@gmail.com, as JONES' e-mail address. D.S. said that she had thought that KEYS and JONES had deleted the advertisements depicting D.S. once D.S. had left.

7. D.S. recognized KEYS and JONES in a picture which was available on the publicly-available portion of JONES' Facebook account, and identified each of them. D.S. was subsequently shown a photographic lineup, from which she selected the photograph of Kebreyana Jamai Jones as JONES. D.S. was subsequently shown a photographic lineup, from which she identified a photograph of Donniel Lavon KEYS as the person that had introduced himself as "Darnell" and then forcibly prostituted her.

8. On February 21, 2014, a federal search warrant issued by the Hon. William C. Turnoff, United States Magistrate Judge, was executed at 14420 Monroe Street, Miami, Florida 33176. KEYS and JONES were present at the residence when the warrant was executed. From inside the residence, law enforcement officers recovered: 1) a web camera; 2) a tablet computer; 3) a Dell laptop computer; 4) a damaged Apple iPad; 5) paperwork related to ADT home security service; 6) a high-precision scale; 7) multiple small plastic bags; 8) two cellular phones; and 9) an open condom wrapper; among other miscellaneous items. KEYS and JONES were arrested at the residence; an additional cellular phone was seized from JONES' person.

## CONCLUSION

9. In light of the facts described above, I respectfully submit that there exists probable cause to believe that Donniel Lavon KEYS and Kebreyana Jamai JONES: 1) willfully conspired to engage in the sex trafficking of minors, in violation of Title 18, United States Code, Section 1594; and 2) engaged in the sex trafficking of minors, in violation of Title 18, United

8

States Code, Section 1591. I therefore respectfully request that the attached complaint be issued charging KEYS and JONES with the above-described offenses.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
SPECIAL AGENT AMANDA L. DETTERLINE
FEDERAL BUREAU OF INVESTIGATION

SUBSCRIBED and SWORN to before me
this 21 day of February, 2014 in Miami, Florida.

_____
HON. WIILIAM C. TURNOFF
UNITED STATES MAGISTRATE JUDGE